IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 1, 2022

## IN RE MORGAN R.

**Appeal from the Chancery Court for Monroe County
No. 20971    Jerri Bryant, Chancellor**

_____

**No. E2021-01206-COA-R3-PT**
_____

This is an appeal by Mother from the trial court's termination of her parental rights on the grounds of abandonment.  Mother contends that her actions were not willful such as to warrant termination, while also arguing that termination is not in the best interest of the child.  For the reasons discussed herein, we affirm the trial court's termination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

James Harvey Stutts, Sweetwater, Tennessee, for the appellant, Kala B.

John W. Cleveland, Sweetwater, Tennessee, for the appellees, Blake R. and Victoria R.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Blake R. ("Father") and Kala B. ("Mother") are the biological parents of one minor child, Morgan R. ("Child"), born in early 2015.[1]  Although Mother and Father never married, Father was very involved in Child's life, and by 2017, he was providing most of the child care, along with Child's maternal grandmother.  Based on the facts available in the record, it is apparent that Mother has struggled with drugs since an early age and has been incarcerated, on and off, for almost the duration of Child's life.

In August of 2017, Child was removed from Mother's care and, pursuant to a

---

[1] This Court has a policy of protecting children's identities in parental termination cases by initializing the names of certain persons mentioned.

subsequent court order in October of 2017, placed in Father's custody. At one point, Mother was essentially on the run from criminal charges, and she did not visit Child after August of 2017. Mother was, however, permitted by court order to have visitation with Child by contacting Soloman Family Solutions, a supervised visitation center. Mother testified to this fact and admitted that she never contacted the center to exercise visitation with Child. During those periods when Mother was not incarcerated, she worked at a junkyard and lived with an alleged drug supplier and user, Slade M., who provided Mother with housing and utilities. In addition to working at the junkyard, Mother briefly held numerous other temporary jobs. According to her testimony, Mother used the earnings she received from these jobs to fund her drug addiction. In April of 2019, Mother was ordered to pay child support. She testified that, until November 2019, she maintained telephonic and other electronic contact with Child when Child happened to be at the maternal grandmother's home. She was subsequently incarcerated from December of 2019 until April of 2020. Upon her release, she was immediately taken to New Beginnings, a transitional housing facility. While living at New Beginnings, in approximately August or September, 2020, Mother began working and paying court-ordered child support. She completed her drug treatment program on April 6, 2021, and, from what we can ascertain from the record, continued to reside at the facility.

Father married Victoria R. ("Step-Mother") in August of 2019. On December 11, 2019, over two years after Mother lost custody of Child, Father and Step-Mother petitioned the trial court to terminate Mother's parental rights and to allow Step-Mother to adopt Child. Trial on the matter took place on July 27, 2021 and July 29, 2021. In its order entered on September 15, 2021, the trial court terminated Mother's parental rights to Child on the basis of a failure to visit and a failure to support and specifically concluded that Mother did not prove that there was a lack of willfulness on her part concerning these grounds. In addition to finding that grounds for termination existed, the trial court also concluded that such termination was in Child's best interest. Further, in its September 15th order, the trial court approved Step-Mother's adoption of Child. This appeal followed.

## STANDARD OF REVIEW

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010)). Although this right is considered to be both fundamental and constitutionally protected, it is not absolute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007). This right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). "[T]he state as *parens patriae* has a special duty to protect minors," *Hawk v. Hawk*, 855 S.W.2d 573, 580 (Tenn. 1993) (quoting *Matter of Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)), and "Tennessee

law . . . thus . . . upholds the state's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Id.*

Under Tennessee law there exist "[w]ell-defined circumstances . . . under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015). These circumstances are statutorily defined. *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005)). "To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "'Clear and convincing evidence' is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Id.* (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). This heightened burden of proof "minimizes the risk of erroneous decisions." *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007).

Due to this heightened burden of proof, we must adapt our customary standard of review:

> First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d at 861.

## DISCUSSION

Tennessee Code Annotated section 36-1-113(g) provides various grounds upon which termination of party's parental rights is to be determined. *See* Tenn. Code Ann. § 36-1-113(g). Of relevance to the present appeal, section 36-1-113(g)(1) provides that parental rights may be terminated if it is found that "[a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]" Tenn. Code Ann. § 36-1-113(g)(1). Abandonment is defined in pertinent part as:

> (i)　　For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or

guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i). The statute also provides that an "absence of willfulness" is an affirmative defense regarding the ground of abandonment for failure to visit or support. *See* Tenn. Code Ann. § 36-1-102(1)(I). The parent "shall bear the burden of proof that the failure to visit or support was not willful." *Id.*

In the present case, the trial court found clear and convincing evidence to terminate Mother's parental rights on the grounds of abandonment based on Mother's failure to visit and failure to support. Accordingly, we will analyze the propriety of each of these findings, as well as the trial court's determination that termination of Mother's parental rights was in Child's best interest.[2]

*Grounds for Terminating Mother's Parental Rights*

Failure to Visit

We turn first to the trial court's determination that Mother abandoned Child by failing to visit. The notion of "failed to visit" is statutorily defined by Tennessee Code Annotated section 36-1-102(1)(E), which provides that "failed to visit" is the "failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Here, Father and Step-Mother filed their petition to terminate Mother's parental rights as to Child on December 11, 2019. Accordingly, we look to the four-month period prior to December 11, 2019. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i) ("For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents . . . have failed to visit [the child.]"). However, as previously noted, upon a charge of failure to visit, a parent may assert an affirmative defense that such failure was not willful. Tenn. Code Ann. § 36-1-102(1)(I). Here, in response to the petition to terminate her parental rights, Mother raised the affirmative defense of lack of willfulness concerning the grounds for termination. Accordingly, Mother bears the burden of proof to establish this defense by a preponderance of the evidence. *Id.* This Court has previously explained willfulness in the context of a termination proceeding:

---

[2] In her brief, Mother appeals only the ground pertaining to her visitation. Nevertheless, in light of the Supreme Court's holding in *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016), we are required to review the trial court's findings as to *each* of the grounds for termination and "whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal."

[W]illfulness in the context of termination proceedings does not require the same standard of culpability as is required by the penal code, nor does it require that the parent have acted with malice or ill will. *In re Audrey S.*, 182 S.W.3d at 863; *see also In re S.M.*, 149 S.W.3d 632, 642 (Tenn. Ct. App. 2004). Rather, a parent's conduct must have been willful in the sense that it consisted of intentional or voluntary acts, or failures to act, rather than accidental or inadvertent acts. *Id.* Willful conduct is the product of free will rather than coercion. *Id.* A person acts willfully if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. *Id.* at 863-64. "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864 (citing *In re M.J.B.*, 140 S.W.3d [643,] 654 [(Tenn. Ct. App. 2004)]).

*In re J.G.H., Jr.*, No. W2008-01913-COA-R3-PT, 2009 WL 25020003, at *15 (Tenn. Ct. App. Aug. 17, 2009).

In this case, the trial court determined, by clear and convincing evidence, that Mother abandoned Child by willfully failing to visit during the requisite four-month period. Specifically, the trial court found that, in August of 2017, Child was removed from Mother and later placed in Father's custody in October of 2017. Despite Child's removal, Mother was aware that she was permitted to visit Child simply by making arrangements with Soloman Family Solutions, a supervised visitation center. Mother admits that she made no effort to visit with Child at Soloman Family Solutions and did not see Child after August of 2017. Mother was also in and out of incarceration subsequent to Child's removal, and she again admits that, during the times she was not incarcerated, she made no effort to visit with Child. Based upon these facts, the trial court determined that Mother's failure to visit Child was willful.

In her brief, Mother does not dispute that she did not visit with Child during the relevant four-month period, but rather, she argues that the trial court failed to contextually evaluate her affirmative defense as to the lack of willfulness. Specifically, Mother argues that she made efforts to maintain telephone contact with Child and that this, combined with requests to visit made to the trial court, evinces a lack of willfulness as it pertains to the ground of failure to visit. Respectfully, we disagree.

In addressing Mother's argument, we note that, "[t]elephone calls and text messages 'during the pivotal four-month period do[] not constitute 'visitation,' either token or otherwise, and do[] not preclude a finding that [a parent's] failure to visit the child was willful.'" *In re Brianna B.*, No. M2019-01757-COA-R3-PT, 2021 WL 306467, at *4 (Tenn. Ct. App. Jan. 29, 2021) (quoting *In re Adoption of Marissa O.R.*, No. W2013-01733-COA-R3-PT, 2014 WL 2475574, at *15 (Tenn. Ct. App. May 30, 2014)). Mother appears to take particular issue with Father's actions, which she posits resulted in an

interference with her efforts to visit and have contact with Child. Indeed, after Father ceased Child's contact with maternal grandmother on November 18, 2019, Mother argues that this "unilaterally cut off what contact [Mother] had with child[.]" However, regardless of Father's cessation of Child's contact with the maternal grandmother, we find no indication that this rendered Mother unable to exercise visitation with Child.[3] Moreover, Father cut off contact with the maternal grandmother on November 18, 2019, less than a month prior to filing the petition. Mother's argument effectively ignores the other months that are to be considered under the four-month period pursuant to the statute, and she offers no argument as to her reasons for failing to visit Child in the months before Father ceased contact with the maternal grandmother. In fact, Mother took *no* action to exercise visitation with Child, despite knowing that she had the ability to do so.[4] In fact, if we take into consideration "evidence of [Mother's] conduct and the relationship between [Child] and [Mother]," as she requests in her brief, we are compelled to point to the fact that Mother has not seen Child since Child was removed from her custody in August of 2017, over two years prior to the filing of the present petition, even though she had the ability to do so.[5] Indeed, taking the evidence in the record before us, we can only conclude that Mother has willfully failed to visit Child during the relevant time period.

We, therefore, conclude that there is clear and convincing evidence in this record that supports the termination of Mother's parental rights on the ground of abandonment based on a failure to visit.

### Failure to Support

The trial court also terminated Mother's parental rights based on a finding of abandonment as a result of a failure to support. Tennessee Code Annotated section 36-1-102(1)(D) provides that "'failed to support' or 'failed to make reasonable payments toward such child's support' means the failure 'for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments towards the support of the child.'" Tenn. Code Ann. § 36-1-102(1)(D). Again, as with the charge of failure to visit, a parent may similarly raise the affirmative defense of a lack of willfulness concerning the charge of failure to support. Tenn. Code Ann. § 36-1-102(1)(I). "Abandonment may not be repented of by resuming visitation or support subsequent to the

---

[3] Mother contends that Father also prevented her from exercising visitation with Child because he sought a court order to suspend visitation, which was apparently granted in December of 2020. However, we find this argument to be irrelevant at the onset as the relied upon events took place a year *after* the filing of the termination petition.

[4] In her brief, Mother also argues that she "expressed her desire [to the trial court] to have visitation." However, this particular instance appears to have occurred in May of 2021, over a year *after* the filing of the termination petition. Accordingly, we do not find this relevant in terms of Mother's willfulness.

[5] As noted earlier, Mother was permitted court-approved visitation with Child at Soloman Family Solutions, but she failed to ever do so.

- 6 -

filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child." Tenn. Code Ann. § 36-1-102(1)(F).

Here, the trial court determined that there was clear and convincing evidence to terminate Mother's parental rights on the basis of abandonment as a result of her failure to support. Specifically, it found that, despite Mother being ordered to pay child support in April of 2019, she did not pay any support until sometime in August or September, 2020, *after* the filing of the termination petition. In fact, in her testimony, Mother admitted that it was her own choice not to pay child support even though she had the money to do so and despite having no bills of her own. As such, based on Mother's own testimony, it does not appear that her failure to support was due to circumstances outside of her control, but rather, was due to her own willfulness. Based on our review of the record and the trial court's findings, we conclude that there is clear and convincing evidence that supports the termination of Mother's parental rights on the ground of abandonment as a result of a failure to support.

*Whether Termination of Mother's Parental Rights is in Child's Best Interest*

In addition to finding that two separate grounds existed to terminate Mother's parental rights, the trial court found by clear and convincing evidence that such termination was in Child's best interest. The Supreme Court has previously elucidated that

> [f]acts considered in the best interests analysis must be proven by a "preponderance of the evidence, not by clear and convincing evidence." "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child."

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017) (internal citations omitted). Tennessee Code Annotated section 36-1-113(i) sets forth numerous factors that the court shall consider in determining whether termination of a party's parental rights is in the best interest of the child at issue. In this matter, the relevant factors are as follows:

> 1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

- 7 -

2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (2019). [6] A trial court is not required to find the existence of *each* of these previously-enumerated factors before concluding that termination of a party's parental rights is in the best interest of a child. *In re Addalyne S.*, 556 S.W.3d at 793 (citing *In re Navada N.*, 498 S.W.3d 579, 607 (Tenn. Ct. App. 2016)). Indeed, "[d]epending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis." *In re Navada N.*, 498 S.W.3d at 607 (citing *In re Audrey S.*, 182 S.W.3d at 877). Moreover, in *In re Audrey S.*, this Court made clear that "[a]scertaining a child's best interests does not call for a rote examination of each of [the best interest factors] and then a determination of whether the sum of the factors tips in favor of or against the

_____

[6] Although not relevant to the issues posed by this particular appeal, we observe that Tennessee Code Annotated section 36-1-113(i) was recently amended by the General Assembly to incorporate additional factors to be considered as part of the best interest analysis under the statute. *See* 2021 Tenn. Pub. Acts, c. 190, §1. This amended version went into effect on April 22, 2021, well after the filing of the petition in this matter, which occurred on December 11, 2019. As such, we analyze the best interest factors as they existed at the time of the filing in this matter. *See In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004) ("[S]tatutes are presumed to operate prospectively unless the legislature clearly indicates otherwise.").

parent." *In re Audrey S.*, 182 S.W.3d at 878.

In this case, the trial court provided the following findings with regards to the above best interest factors:

(1) [Mother] has failed to make such an adjustment of her circumstance, conduct and conditions as to make it safe and in the child's best interest to be in her home.

(2) [Mother] has not effected an adjustment even after almost 4 years since losing custody of [Child], and a lasting adjustment does not reasonably appear possible because [Mother's] plan includes marrying her former co-dependent drug abuser, who lives at a junkyard, and with whom she hid from her criminal charges.

(3) [Mother] has not maintained regular visitation with [Child.]

(4) There is no proof [Mother] has a meaningful relationship with [Child.] [Child] does not even know who [Mother] is.

(5) The effect of the introduction of [Mother] and her physical environment into [Child's] life would be troublesome, harmful, and confusing to [Child's] emotional and psychological condition.

(6) [Mother] neglected [Child] for two-thirds of [Child's] life.

(7) [Mother's] residence in a sober living transitional house for recovering substance abusers is not a healthy environment for [Child.] Her "home" prior to rehab was at a junkyard – a physical environment neither healthy nor safe. In addition, there was criminal activity and drug use and dealing there. [Mother's] drug use throughout most of [Child's] life rendered [Mother] consistently unable to care for [Child] in a safe and stable manner.

(8) [Mother] has not paid child support consistent with the child support guidelines promulgated by the department pursuant to *Tenn. Code Ann. §* 36-5-101.

Based on the record before us, we agree with the trial court's conclusion that there is clear and convincing evidence that it is in Child's best interest to terminate Mother's parental rights.

In her brief, Mother contends that the trial court "failed to analyze the 'unique facts and circumstances' of the case beyond finding grounds." Specifically, it appears that Mother argues that she has exhibited a change of circumstances such that she has overcome the trial court's findings concerning Child's best interests. Respectfully, we disagree. Although we acknowledge the improvements Mother has made in her life in completing her rehabilitation program, becoming gainfully employed, and paying child support all while continuing to live in a drug treatment transitional facility, we must again point out that a determination of best interests is to be viewed from *Child*'s perspective, not

Mother's. *See In re Addalyne S.*, 556 S.W.3d at 792 (Tenn. Ct. App. 2018) (quoting *In re Gabriella D.*, 531 S.W.3d at 681-82). Instructive is *In re Kira G.*, No. E2016-01198-COA-R3-PT, 2017 WL 1395521 (Tenn. Ct. App. Apr. 18, 2017). In *Kira*, a father argued that, upon his release from prison, he had made an adjustment of circumstances such as would allow the child at issue to reside in his home safely, would allow him to support the child regularly, and that he had maintained regular visitation with the child. *Id.* at *8. Although this Court noted the father's measures to improve his life, it also stated that "the evidence is clear and convincing that [the child] is currently in a stable home environment where she is beginning to excel at school and where her Mother and Stepfather love her and are involved in her life. The trial court correctly focused on [the child.]" Similarly here, we acknowledge the steps Mother has taken to improve her life. Nevertheless, these efforts do not negate the trial court's findings or the actions previously taken by Mother prior to the filing of the petition. Again, Mother has not seen Child since August of 2017, and Child currently lives with Father and Step-Mother in a stable and happy home. In fact, according to the record on appeal, Child does not recognize Mother and, instead, acknowledges Step-Mother as her mother. In taking into account that the best interests determination must be viewed from Child's perspective, we conclude that there is clear and convincing evidence in the record to support the trial court's conclusion that it is in Child's best interest to terminate Mother's parental rights.

## CONCLUSION

Based on the foregoing, we affirm the trial court's termination of Mother's parental rights.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

- 10 -